UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE,<br><br>Plaintiff,<br><br>v.<br><br>PORSHE PAGE,<br><br>Defendant. | Case No. 2:25-cv-01972-CSK<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT<br><br>(ECF No. 9) |

Pending before the Court is Plaintiff's motion for default judgment pursuant to Federal Rules of Civil Procedure 55(b)(2). (ECF No. 9.) This motion was set for hearing for December 29, 2025. (ECF No. 9) Defendant did not file a response to the motion, nor has she appeared in this case in any way. On December 8, 2025, the undersigned vacated the hearing, granted Defendant additional time to respond to the motion, and cautioned her that failure to respond may result in the imposition of a default judgment against her. (ECF No. 10.) When the time period for briefing was complete, the motion was taken under submission without argument pursuant to Local Rule 230(g). (*Id.*) For the reasons stated below, the Court recommends Plaintiff's motion for default judgment be GRANTED, and that judgment be entered in favor of Plaintiff.

/ / /

/ / /

1

## I.    BACKGROUND

### A.    Factual Background

Plaintiff North American Company for Life and Health Insurance ("North American") is an Iowa corporation with its headquarters and principal place of business in Iowa. (ECF No. 1 ("Compl."), ¶ 5.) Defendant is an individual who resides in California. (*Id.*, ¶ 6.) Plaintiff filed this action on July 15, 2025 seeking a declaratory judgment that a life insurance policy it issued for Defendant in 2024 is void due to Defendant's alleged failure to disclose a material change in health prior to the issuance of the policy and/or material misrepresentations in her application for the policy. (*Id.*, ¶¶ 1, 20, 50.)

In May and June 2024, Defendant completed and submitted an application to Plaintiff for a $100,000 life insurance policy on her life. (*Id.*, ¶¶ 11-13; *see* ECF No. 1-1, Ex. A.) The application required her to accurately disclose whether "[o]ther than tests related to the HIV virus, in the past 24 months, [you have] been advised by a licensed medical professional to see a medical specialist, have surgery, or a diagnostic test or procedure, which has not been completed or results are unknown?" (*Id.*, ¶ 16.) Defendant represented that she had not. (*Id.*, ¶ 17.) The application also required Defendant to "agree to immediately advise the Company of any change to any of the responses on this application . . . that arise after completing this application, but before the policy is effective." (*Id.*, ¶ 18.) Defendant signed the application, acknowledging her agreement. (*Id.*, ¶ 19.) On July 8, 2024, in reliance upon Defendant's representations, Plaintiff issued a life insurance policy for Defendant with the effective date of July 8, 2024. (*Id.*, ¶ 20; *see* ECF No. 1-2, Ex. B.)

On July 19, 2024, Defendant e-signed a Statement of Health and Insurability that required her to accurately represent, in part, whether

> [s]ince the date of the original application . . . ., has the person to be covered by the policy:
>
> A. Received medical advice or treatment by a member of the medical profession for any change in health (list any exceptions)?

B. Consulted, been examined, or treated by a physician or medical practitioner (list any exceptions)?

(*Id.*, ¶¶ 24, 26; *see* ECF No. 1-3. Ex. C.) To both questions, Defendant represented that she had not. (*Id.*, ¶¶ 25, 27.) Defendant further indicated that "the above statements are complete and true, to the best of my knowledge and belief" and that "[u]nless all questions are truthfully answered No, it is understood that no coverage will take effect until the statement of Health is reviewed and accepted by the company." (*Id.*, ¶ 28.)

On October 1, 2024, Defendant submitted an application for accelerated death benefits due to critical illness and sought to accelerate $25,000 of the policy's death benefit ("the Claim"). (*Id.*, ¶ 30; *see* ECF No. 1-4, Ex. D.) On November 18, 2024, Plaintiff sent a letter to Defendant stating that Plaintiff would be conducting a standard review of the Claim because it was made within two years of the issuance of the policy. (*Id.*, ¶ 32; *see* ECF No. 1-6, Ex. F.)

During its review of the Claim, Plaintiff learned that Defendant misrepresented her medical history in the application and failed to disclose a material change in health prior to the issuance of the policy as required. (*Id.*, ¶ 33.) Defendant's medical records reveal that, prior to her submission of the application, a right breast mass was identified, with a doctor recommending a diagnostic test that had not been completed. (*Id.*, ¶ 34. ) Also, on or about June 12, 2024, approximately six days after Defendant e-signed part of the application and one month before the policy issued, another doctor recommended that she undergo additional medical imaging because of fibrocystic breast changes and a family history of breast cancer. (*Id.*, ¶ 35. ) Defendant never disclosed this information to Plaintiff. (*Id.*, ¶ 36.) Had Defendant truthfully represented her medical history as to the recommended additional diagnostic testing and medical imaging, Plaintiff alleges the policy would not have issued. (*Id.*, ¶ 38.)

On April 30, 2025, Plaintiff sent a letter to Defendant requesting to rescind the policy based on the material misrepresentations and/or omissions and requesting her mutual agreement to do so. (*Id.*, ¶ 42; *see* ECF No. 1-7, Ex. G.) Defendant did not

3

respond to the letter. (*Id.*, ¶ 43.)

**B.      Procedural Background**

Plaintiff filed a complaint for declaratory judgment against Defendant on July 15, 2025 seeking rescission of Defendant's life insurance policy. (Compl.) The docket reflects that the summons was returned executed on Defendant at her last known address on July 30, 2025. (ECF No. 4.)

On September 19, 2025, the Clerk entered default as to Defendant. (ECF No. 6.)

On November 19, 2025, Plaintiff moved for default judgment against Defendant. After Defendant did not timely respond, the Court vacated the hearing on the motion set for December 29, 2025 and provided Defendant "one additional, final opportunity to oppose the motion." (ECF No. 10 at 1.) After the time period for briefing ended with no response from Defendant, Plaintiff's motion for default judgment was submitted on the papers. (*Id.* at 2.)

**II.      LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. *See* Fed. R. Civ. P. 55(a). However, this default does not automatically entitle the plaintiff to a judgment. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citations omitted). The decision to grant or deny the entry of default judgment is within the district court's discretion. *NewGen, LLC v. Safe Cig, LLC,* 840 F.3d 606, 616 (9th Cir. 2016).

In determining whether to enter default judgment, courts consider the following factors:

1.   the possibility of prejudice to the plaintiff;

2.   the merits of the substantive claim(s);

3.   the sufficiency of the complaint;

4.   the amount of money at stake in the lawsuit;

5.   whether there are any disputes of material fact;

6.  whether the defendant's default was due to excusable neglect; and

7.  the strong policy favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The Ninth Circuit has long disfavored default judgments, counseling that cases be decided on the merits "whenever reasonably possible." *Id*. at 1472.

Once a default is entered, all well-pled allegations in the complaint regarding liability are deemed true. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "On the other hand, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *United States v. Cathcart*, 2010 WL 1048829, at *4 (N.D. Cal. Feb. 12, 2010) (citation omitted). "[I]t follows from this that facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Necessary facts not contained in the pleadings and claims which are legally insufficient are not established by default. *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). Further, a plaintiff's allegations regarding damages are not deemed true at default, and the plaintiff bears the burden to prove damages with evidence. *See* Fed. R. Civ. P. 55(b)(2)(C); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

## III.    DISCUSSION

Plaintiff moves for default judgment seeking an order declaring the life insurance policy No. ******7345, issued to Defendant on July 8, 2024, void or rescinded due to Defendant's material misrepresentations.

### A.    Jurisdiction and Service

As a preliminary matter, a court considering whether to enter default judgment must first determine whether it has jurisdiction over both the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

#### 1.    Subject Matter Jurisdiction

In its complaint, Plaintiff asserted the existence of diversity jurisdiction. (Compl.,

¶¶7-9, citing 28 U.S.C. § 1332.) In declaratory judgment actions concerning whether an insurance policy is in effect or has been terminated, the policy's face amount is the measure of the amount in controversy. *Elhouty v. Lincoln Benefit Life Co.*, 886 F.3d 752, 756 (9th Cir. 2018). Plaintiff alleges the policy's face amount is $100,000. (*Id.*, ¶ 8.) Accordingly, plaintiff has properly alleged that the amount in controversy exceeds $75,000. Plaintiff also alleges it is an Iowa corporation with a principal place of business in Iowa, while defendant is a citizen of California. (*Id.*, ¶ 9.) Accordingly, there is complete diversity among the parties and the court has subject matter jurisdiction.

2.     Existence of A "Case of Actual controversy"

The Declaratory Judgment Act allows a federal court to "declare the rights and other legal relations" of parties to a "case of actual controversy." 28 U.S.C. § 2201; *see also Spokane Indian Tribe v. U.S.*, 972 F.2d 1090, 1091 (9th Cir.1992). "First, the court must inquire whether there is a case of actual controversy within its jurisdiction." *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir.1994) (citations omitted). The test is "whether 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 671 (9th Cir. 2004) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

As set forth above, Plaintiff seeks to void or rescind a life insurance policy allegedly based on material misrepresentations by Defendant about the state of her health prior to the policy's effective date. Defendant has not agreed to rescind the policy nor has she responded to Plaintiff's allegations. The Court finds that there is more than "an abstract or hypothetical disagreement" over the issues of whether the policy should be declared rescinded. Thus, there exists a case of actual controversy.

3.     Exercise of Discretion

"[I]f there is a case or controversy within its jurisdiction, the court must decide whether to exercise that jurisdiction. The statute gives discretion to courts in deciding whether to entertain declaratory judgments; it states that the court 'may declare the

rights ... of any interested party.'" *Am. States Ins.*, 15 F.3d at 144-45 (quoting 28 U.S.C. § 2201(a) (emphasis added)). However, "when other claims are joined with an action for declaratory relief (e.g., ... rescission ...), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief. If a federal court is required to determine major issues of state law because of the existence of non-discretionary claims, the declaratory action should be retained to avoid piecemeal litigation." *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225-26 (9th Cir. 1998). Here, Plaintiff seeks declaratory relief rescinding the policy and the undersigned is unaware of any pending state court litigation. Accordingly, the undersigned finds it proper to exercise jurisdiction over the recission claim.

**B.    *Eitel* Factors**

For the following reasons, the Court finds that the *Eitel* factors weigh in favor of granting default judgment against Defendant.

1.    Factor One: The Possibility of Prejudice to the Plaintiff

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment were not entered, and such potential prejudice to the plaintiff weighs in favor of granting a default judgment. *See PepsiCo,* 238 F. Supp. 2d at 1177. Here, the Clerk of Court entered default against Defendant on September 19, 2025 (ECF No. 6), and Defendant has not participated in the litigation despite being served with the Complaint, default judgment motion, and the Court's December 8, 2025 order. (*See* ECF Nos. 4 & 11.) Plaintiff would suffer prejudice if the Court did not enter a default judgment because it would be without recourse for recovery. Accordingly, the first *Eitel* factor favors the entry of default judgment.

2.    Factors Two and Three: The Merits of the Claims and the Sufficiency of the Complaint

The Court considers the merits of Plaintiff's substantive claims and the sufficiency of the complaint together below because of the relatedness of the two inquiries. The court must consider whether the allegations in the complaint are sufficient to state a

7

claim that supports the relief sought. *See Danning*, 572 F.2d at 1388; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175.

Plaintiff seeks rescission of the life insurance policy based on material misrepresentations in the policyholder's application. California Insurance Code § 359 provides that "[i]f a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false." With regard to Defendant's life insurance, insureds are bound by statements made in an application when the application is attached to or endorsed on a policy when issued. *See* Cal. Ins. Code §§ 10113, 10381.5.

Under California law, "a material misrepresentation or concealment in an insurance application, whether intentional or unintentional, entitles the insurer to rescind the insurance policy ab initio." *W. Coast Life Ins. Co. v. Ward*, 132 Cal. App. 4th 181, 186–87 (2005) (citing *O'Riordan v. Fed. Kemper Life Assurance*, 36 Cal.4th 281, 286-87 (2005)). This rule has been codified in the California Insurance Code. *See* Cal. Ins. Code § 331. "Materiality is determined solely by the probable and reasonable effect which truthful answers would have had on the insurer." *Thompson v. Occidental Life Ins. Co.*, 9 Cal.3d 904, 916 (1973); *see also* Cal. Ins. Code § 334. The fact that an insurer has demanded answers to specific questions on an application for insurance is usually sufficient to establish the materiality of that information as a matter of law. *W. Coast Life Ins. Co.*, 132 Cal. App. 4th at 187 (quoting *Old Line Life. Ins. Co. v. Superior Court*, 229 Cal. App. 3d 1600, 1603-04 (1991)).

Here, Defendant indicated in her 2024 application for a life insurance policy that she had not been advised by a medical professional to have a diagnostic test; yet, her medical records revealed that a doctor had identified a right breast mass and recommended a diagnostic test which had not been completed. (Compl., ¶¶ 16-17, 34.) In her application, Defendant also agreed to "immediately advise [Plaintiff] of any change to the responses on this application . . . that arise after completing this application, but before the policy is effective." (*Id.*, ¶ 18.) Her medical records revealed that, one month

8

before the policy issued, another doctor recommended that she undergo additional medical imaging because of fibrocystic breast changes and a family history of breast cancer." (*Id.*, ¶ 35.) Defendant never disclosed this information to Plaintiff. (*Id.*, ¶ 36.) Had she truthfully represented her medical history as to the recommended additional diagnostic testing and medical imaging, Plaintiff would not have issued the policy. (*Id.*, ¶ 38.) These factual allegations are sufficient to support Plaintiff's claim that it reasonably relied on material misrepresentations/omissions in Defendant's life insurance application, and that it is entitled to rescission of the policy. Accordingly, the second and third *Eitel* factors favor the entry of a default judgment.

### 3.    Factor Four: The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of Defendant's conduct. *PepsiCo,* 238 F. Supp. 2d at 1176. Here, Plaintiff seeks declaratory relief in the form of recission. No money damages are sought. Accordingly, the fourth *Eitel* factor favors the entry of default judgment.

### 4.    Factor Five: The Possibility of Dispute Concerning Material Facts

The facts of this case are straightforward, and Plaintiff has provided the Court with well-pleaded allegations and documentation supporting its claims. Here, the Court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the Clerk's entry of default, and thus, there is no likelihood that any genuine issue of material fact exists. *See, e.g., Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); *accord PepsiCo*, 238 F. Supp. 2d at 1177. Accordingly, the fifth *Eitel* factor favors the entry of default judgment.

### 5.    Factor Six: Whether Default was Due to Excusable Neglect

Upon review of the record before the Court, there is no indication that the default was the result of excusable neglect. *See PepsiCo*, 238 F. Supp. 2d at 1177. Plaintiff served Defendant with the summons and the Complaint. (ECF No. 3.) Plaintiff also

9

served Defendant with its motion for default judgment and the Court's December 8, 2025 order. (ECF No. 11.) Despite notice of this lawsuit and Plaintiff's intention to seek a default judgment, Defendant has failed to participate in this action or to defend herself. Accordingly, the sixth *Eitel* factor favors the entry of default judgment.

### 6.    Factor Seven: The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Although the Court is cognizant of the policy favoring decisions on the merits, that policy does not, by itself, preclude the entry of default judgment where a defendant fails to appear or defend itself in an action. *See PepsiCo,* 238 F. Supp. 2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010).

### 7.    Conclusion

Upon consideration of the *Eitel* factors, the Court concludes that Plaintiff is entitled to the entry of default judgment against Defendant. The Court next determines the terms of judgment.

### C.    Terms of Judgment

Plaintiff seeks declaratory relief in the form of rescission. The Court determines this relief is appropriate.

## IV.    CONCLUSION

For the reasons set forth above, it is HEREBY ORDERED that the Clerk of Court assign a district judge to this action.

IT IS HEREBY RECOMMENDED that:

1.  Plaintiff's motion for default judgment against Defendant (ECF No. 9) be GRANTED;

2.  The district court enter judgment against Defendant and order that North American Life Insurance Policy No. ******7345, issued to Defendant on July 8, 2024, is rescinded and set aside as null and void ab initio; and

3.  The Clerk of the Court close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. This document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the Court within 14 days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  March 26, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

6/nort1972.default.grant.f&r

11